Case No. 22-3394

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

MATTHEW DICKSON,

Plaintiff-Appellant,

v.

DIRECT ENERGY, LP, et al.,

Defendants-Appellees.

---

On Appeal From
United States District Court for the Northern District of Ohio
Case No. 5:18-cv-00182-JRA
Honorable John Adams

---

**BRIEF OF APPELLANT MATTHEW DICKSON**

---

Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

*Attorneys for Appellant*

## CORPORATE DISCLOSURE STATEMENT

Plaintiff Matthew Dickson is not a subsidiary or affiliate of a publicly owned corporation, nor is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome of this appeal.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
         misny@mmmb.com

*Attorneys for Appellant*

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF AUTHORITIES ................................................................. iv

I.   STATEMENT REGARDING ORAL ARGUMENT .................................... 1

II.  JURISDICTIONAL STATEMENT ................................................ 1

III. STATEMENT OF ISSUES ........................................................ 1

IV.  STATEMENT OF THE CASE ..................................................... 2

    A.   Statutory Background .......................................................... 2

    B.   Since the outset of this case, Mr. Dickson has alleged that he received multiple unsolicited, unconsented to ringless voicemails promoting Direct Energy's goods and services that harmed him and other recipients of those calls. ........................................................ 5

    C.   In an earlier decision in this case, Magistrate Judge Limbert, who was presiding over the action via consent prior to his retirement, held that ringless voicemails are calls within the meaning of the TCPA and not analogous to texts, as the district court later held in its dismissal order . ............................................................................... 7

    D.   Direct Energy filed motion to dismiss for lack of standing. ............... 8

    E.   The district court granted Direct Energy's motion to dismiss for lack of standing in a six-page opinion issued without oral argument, ignoring the Sixth Circuit's standing cases and those of the United States Supreme Court, instead extending the Eleventh Circuit's minority position. ....................................................................... 9

V.   STANDARD OF REVIEW ........................................................ 10

VI.  SUMMARY OF THE ARGUMENT ............................................. 11

VII.   ARGUMENT ........................................................................ 12

    A.    The district court's failure to follow this Court's binding rulings on standing under the TCPA was clear error and should be reversed. ... 12

    B.    The United States Supreme Court's decision in *TransUnion* makes clear that a TCPA violation has a common law analogue and supports Article III standing. ........................................................... 17

    C.    The district court's framing of the case as involving a single ringless voicemail that did not tie up his line and attributing significance to his inability to recall the exact contents of the message was clear error. ................................................................................. 21

    D.    The district court found that a ringless voicemail is analogous to a text and used that finding to adopt the reasoning of *Salcedo*, ignoring Magistrate Judge Limbert's finding earlier in this case that a ringless voicemail is a call. ................................................................ 24

VIII.  CONCLUSION AND RELIEF SOUGHT ................................. 26

CERTIFICATE OF COMPLIANCE .................................................... 27

CERTIFICATE OF SERVICE ............................................................ 28

DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS ................ 29

# TABLE OF AUTHORITIES

## Cases

*Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, W.D. Tenn. No. 1:17-cv-01149-JDB-jay, 2019 U.S. Dist. LEXIS 148034 (Aug. 30, 2019) ............... 14

*American Copper & Brass, Inc. v. Lake City Indus. Prods.,* 757 F.3d 540 (6th Cir. 2014) ................................................................................................. 13

*Arizona v. California*, 460 U.S. 605 (1983) ......................................................... 26

*Buchholz v. Tanick*, 946 F.3d 855 (6th Cir. 2020) ............................................... 12

*Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877 (6th Cir. 2004) ................................................................................................. 11

*Dickson v. Direct Energy, LP,* No. 5:18CV182, 2019 U.S. Dist. LEXIS 96938 (N.D. Ohio Mar. 18, 2019) ........................................................... 8, 25

*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) .................. 16, 17, 19

*Grigorian v. FCA US LLC*, 838 F. App'x 390 (11th Cir. 2020) ...................... 9, 17

*Howard v. Whitbeck*, 382 F.3d 633 (6th Cir. 2004) ............................................. 10

*IMHOFF Invest., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir.2015) . 10, 14, 15, 23

*In re Amedisys Holding, LLC,* No. 19-0510, 2020 U.S. App. LEXIS 6364 (6th Cir. Feb. 28, 2020) ...................................................................... 10, 14, 20

*In re Rules and Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (2003) ............................................................................. 3

*In re Rules and Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830 (2012) ............................................................................... 4

*Lovely v. United States*, 570 F.3d 778 (6th Cir. 2009) ........................................ 11

*Lupia v. Medicredit, Inc.,* No. 20-1294, 2021 U.S. App. LEXIS 24547 (10th Cir. Aug. 17, 2021) .................................................................................... 19

*Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir.2019) .......................... 16

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) .......................................... 1

*Parchman v. SLM Corp.*, 896 F.3d 728 (6th Cir. 2018) ............................. 5, 22, 23

*Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) ......................................... 9, 17

*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018) 7, 8, 24, 25

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) ................ 25

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...................................................... 12

*Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017) ....................... 15, 16

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ................................... passim

*United States v. Moored*, 38 F.3d 1419 (6th Cir. 1994) ....................................... 26

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017)............. 16

*Ward v. Nat'l Patient Account Servs. Sols.,* No. 20-5902, 2021 U.S. App. LEXIS 24369 (6th Cir. Aug. 16, 2021) ......................................................................... 20

**Statutes**

28 U.S.C. § 1291 ...................................................................................................... 1
28 U.S.C. § 1331 ...................................................................................................... 1
28 U.S.C. § 1332(d)(2) ............................................................................................ 1
47 U.S.C. § 227 ............................................................................................... passim
47 U.S.C. § 227(b)(1)(A) ......................................................................................... 3
47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................... 2
47 U.S.C. § 227(b)(3) ............................................................................................... 3
Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 (1991) ............ 2

**Constitutional Provisions**

U.S. CONST. art. III ........................................................................................ passim

## I.      STATEMENT REGARDING ORAL ARGUMENT

Appellant Matthew Dickson respectfully requests oral argument in this matter.  This appeal presents an important question of law: whether a plaintiff who received prerecorded ringless voicemails in clear cut violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, has suffered a concrete and particularized injury in fact sufficient to support standing under Article III of the United States Constitution.

## II.      JURISDICTIONAL STATEMENT

The district court had federal-question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1332(d)(2) because the action arises from Defendants' unsolicited telemarketing to Mr. Dickson in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute.  *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012).  On March 25, 2022, the court dismissed Mr. Dickson's complaint for lack of standing (Memorandum Opinion and Order, R. 148), along with a separate Judgment (Judgment Entry, R. 149), thereby implicating 28 U.S.C. § 1291.  Mr. Dickson filed a timely notice of appeal on April 22, 2022.  (Notice of Appeal, R. 150.)

## III.      STATEMENT OF ISSUES

Whether the district court's dismissal of Mr. Dickson's action for lack of standing should be reversed as being in direct conflict with binding decisions of this Court.

1

Whether the district court erred in deeming a prerecorded ringless voicemail analogous to a text message, particularly in light of an earlier ruling in this action by a previous judge that ringless voicemails are calls within the meaning of the TCPA.

Whether the district court misread the record as only evidencing that Mr. Dickson received "a single ringless voicemail ('RVM')" as he alleged in his complaint and testified at his deposition that he received multiple ringless voicemails promoting Direct Energy's goods and services.

## IV.    STATEMENT OF THE CASE

### A.    Statutory Background

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).  According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.  In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In re Rules and Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27

FCC Rcd. 1830, 1844 (2012) (footnotes omitted).  As this Court has held:

> [T]he primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls.  The Congressional findings focus on exactly these kinds of individual wrongs.  Telephone Consumer Protection Act of 1991, Pub. L. 102-243, §2, 105 Stat. 2394 (1991).  For instance, Congress found that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers," that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy," that "residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy," and that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer."  *Id.*  The findings are mostly concerned with individual consumers and protecting them from the nuisance and invasion of privacy that result from unwelcome automated telephone calls.  In other contexts, courts have also described the purpose of the TCPA as protecting consumers from the harms caused by these unsolicited phone calls.  *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements."); *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc.*, 847 F.3d 92, 99 (2d Cir. 2017) ("Congress undertook to limit the use in commerce of certain methods of communication that impose costs, hardships, and annoyances on unwilling recipients.").

4

*Parchman v. SLM Corp.*, 896 F.3d 728, 738-39 (6th Cir. 2018) (footnote 4 omitted, in which the Court held, "It would be a mistake to limit our view of the harms associated with a violation of the TCPA to only actual monetary damages, because the harm from these calls is not so limited").

**B.    Since the outset of this case, Mr. Dickson has alleged that he received multiple unsolicited, unconsented to ringless voicemails promoting Direct Energy's goods and services that harmed him and other recipients of those calls.**

In his complaint, Mr. Dickson alleged that Direct Energy, L.P. is a provider of energy services that relies on telemarketing using prerecorded messages to solicit new clients.  (2d Am. Complaint, R. 34, Page ID # 228, ¶ 16-17.)  Mr. Dickson alleged that Direct Energy placed multiple prerecorded message calls to his cellular telephone number in 2017, including on September 19, November 3, December 1 and 21, leaving prerecorded messages claiming that Mr. Dickson should call a telephone number back about energy services.  (*Id*. at Page ID # 229, ¶ 23-25.)  A call back to the number from which the calls originated resulted in representatives identifying themselves as being "with Direct Energy."  (*Id*. at ¶ 26.)

On November 3, 2017, Mr. Dickson received another prerecorded message explicitly stating that the caller was "Nancy Brown with Direct Energy."  (*Id*. at ¶ 27.)  Mr. Dickson was not interested in changing energy providers, had never done business with Direct Energy, and had not provided written consent to receive the calls.  (*Id*. at ¶ 28.)  In fact, prior to filing this lawsuit, Mr. Dickson wrote to Direct

Energy on November 13, 2017 asking for any evidence of its consent to call him, which he asserted did not exist.  (*Id*. at ¶ 29.)  Direct Energy not only did not respond to Mr. Dickson's letter, it placed two more calls after his letter was sent. (*Id*. at Page ID # 230, ¶ 30.)

Mr. Dickson included specific allegations of harm in his complaint, alleging that he and other call recipients were harmed by the calls, as they were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.  (*Id*. at ¶ 31.) Mr. Dickson further alleged that the calls injured him because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Mr. Dickson and the proposed class.  (*Id*. at ¶ 32.)

Contrary to the district court's recitation of the facts, at his deposition, Mr. Dickson confirmed the accuracy of his allegations of both multiple calls and specific harm.  Mr. Dickson testified that he received eleven voicemails promoting Direct Energy.  (Dickson Deposition, R. 140-1, PageID # 8732, 40:6-11.)  Mr. Dickson further testified that in some instances, his phone would ring, he would pick up, and the call would hang up but still leave a voicemail.  (*Id.* at PageID # 8744, 86:12-25.)  Mr. Dickson additionally testified that the ringless voicemails were "annoying and it was an invasion of my privacy …."  (*Id.*)

**C.**    **In an earlier decision in this case, Magistrate Judge Limbert, who was presiding over the action via consent prior to his retirement, held that ringless voicemails are calls within the meaning of the TCPA and not analogous to texts, as the district court later held in its dismissal order.**

At the outset of the case, the parties consented to proceed before a magistrate judge, and the case was assigned to Magistrate Judge Limbert, who presided over the case until his retirement, which led to the case being reassigned to Judge Adams.  While the case was still before Judge Limbert, Just Deliver IT, LLC ("JDI"), the agent employed by Defendants to send ringless voicemails promoting Direct Energy's goods or services, filed a motion to quash a subpoena issued by Mr. Dickson, arguing in part that it should not be required to produce records because "JDI provides ringless voicemail <u>service</u> which is not a phone call."  (Motion to Quash, R. 63, Page ID # 487.)

Magistrate Judge Limbert rejected this argument, adopting the reasoning of *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 909-910 (W.D. Mich. 2018):

> Despite JDI's position that it does not attempt to contact any person, the Court agrees with the Western District of Michigan's reasoning that ringless voicemails are attempts to communicate via telephone and that to hold otherwise "would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted voicemail messages to wireless consumers."

(Order, R. 75, Page ID # 774 (reported at *Dickson v. Direct Energy, LP,* No. 5:18CV182, 2019 U.S. Dist. LEXIS 96938, at *7 (N.D. Ohio Mar. 18, 2019) (quoting *Saunders*, 319 F. Supp. 3d at 911-912).

**D.    Direct Energy filed a motion to dismiss for lack of standing.**

On October 9, 2020, Direct Energy moved to dismiss Mr. Dickson's complaint for lack of standing.  (Motion to Dismiss, R. 123.)  Mr. Dickson timely opposed.  (Opposition, R. 125.)  Direct Energy filed a reply brief in further support of its motion.  (Reply, R. 129.)  Direct Energy further filed a Notice of Supplemental Authority.  (Notice, R. 131; Ex. A, R. 131-1.)

While the motion to dismiss was pending, along with unrelated motions, the parties agreed to seek a stay of the action to await the resolution of an appeal pending before this Court in *Roberta Lindenbaum v. Realgy, LLC, et al.*, Sixth Circuit Court of Appeals No. 20-4252 ("*Lindenbaum*"), to resolve the question of the constitutionality of the TCPA.  (Motion for Stay, R. 132.)

The district court granted the parties' unopposed motion for stay, ordering: "This matter is hereby STAYED pending resolution of Sixth Circuit Court of Appeals 20-4252.  The pending motions herein denied without prejudice, subject to refiling or renewal following the conclusion of the appeal."  (Marginal Entry, R. 133.)

Following the resolution of *Lindenbaum* (finding that the TCPA was constitutional), the parties jointly moved the lift the stay and reinstate motions to the active docket. (Joint Motion, R. 135.) The district court then lifted the stay, noting, "The Court will also now entertain the previously denied motions …. However, to facilitate a timely review of those motions, the parties are instructed to re-file them with current filing dates. The parties need not re-file any previously filed oppositions or replies." (Order, R. 137.)

Direct Energy then re-filed its motion to dismiss for lack of standing. (Re-filed Motion to Dismiss, R. 140.) Following the court's instructions, Mr. Dickson did not re-file his opposition.

**E.    The district court granted Direct Energy's motion to dismiss for lack of standing in a six-page opinion issued without oral argument, ignoring the Sixth Circuit's standing cases and those of the United States Supreme Court, instead extending the Eleventh Circuit's minority position.**

The district court's decision on Direct Energy's motion to dismiss for lack of standing was issued without oral argument and relies exclusively on two cases from the Eleventh Circuit: *Salcedo v. Hanna*, 936 F.3d 1162, 1167-68 (11th Cir. 2019), and *Grigorian v. FCA US LLC*, 838 F. App'x 390, 393 (11th Cir. 2020), which the district court acknowledged departed from the reasoning of Second, Seventh, and Ninth Circuits. (Memorandum Opinion and Order, R. 148, Page ID # 8984.) Remarkably, the district court did not even address this Court's decisions

directly addressing standing under the TCPA, including *In re Amedisys Holding, LLC,* No. 19-0510, 2020 U.S. App. LEXIS 6364, at *3 (6th Cir. Feb. 28, 2020) ("'Congress may choose to "identify[ ] and elevat[e]" certain intangible, concrete harms by statute,' as it has chosen to do with the TCPA."), and *IMHOFF Invest., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir.2015), in spite of Mr. Dickson's specific argument on those holdings.  (*See* Opposition to Motion to Dismiss, R. 125, Page ID ## 4742-4743.)

The district court described the "specific question" before it as "whether the receipt of a single ringless voicemail ('RVM') is sufficient to confer standing under the Telephone Consumer Protection Act."  (Memorandum of Opinion & Order, R. 148, Page ID # 8982.)  The Court further found that Mr. Dickson lacked standing because his "sole alleged harm appears to be the *de minimus* time he took to read the RVM, a time so limited that he did not even recall its contents."  (*Id.* at Page ID # 8986.)

## V.    STANDARD OF REVIEW

The Sixth Circuit has explained the standard of review of an order granting a motion to dismiss for lack of standing: "We normally review de novo the district court's decision to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004) (citing *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362

F.3d 877, 880 (6th Cir. 2004)).  But when a defendant challenges subject matter jurisdiction by attacking the underlying jurisdictional facts, this Court reviews the district court's factual findings for clear error and its application of the law to the facts de novo.  *Lovely v. United States*, 570 F.3d 778, 781-82 (6th Cir. 2009) (citations omitted).

## VI.  SUMMARY OF THE ARGUMENT

The district court's dismissal of Mr. Dickson's action was directly contrary to binding precedent from this Court holding that in passing the TCPA, Congress identified and elevated an intangible yet concrete harm by statute sufficient to satisfy Article III's injury-in-fact requirement of a "concrete and particularized" injury.  U.S. CONST. art. III.  As this Court, as well as the Second, Fifth, Seventh, Eighth, and Ninth Circuit Courts, have all held, a plaintiff alleging a TCPA violation meets the standard for Article III standing.

In its recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021), the United States Supreme Court confirmed that because the TCPA is a statute with a common law analogue of intrusion upon seclusion, a violation of the TCPA is a sufficiently concrete and particularized statutory violation to support Article III standing.

The district court compounded its legal error as to the law of standing by misreading the record as only containing an allegation of a single ringless

11

voicemail (which would be sufficient to support standing in any event). Mr.

Dickson in fact alleged that he received multiple ringless voicemails promoting

Direct Energy's goods or services and so testified at his deposition.

Finally, the district court's assertion that a ringless voicemail is "similar to a

text" within the meaning of the TCPA is contrary to an earlier ruling in the case by

then presiding Magistrate Judge Limbert and is erroneous as a matter of law as

numerous courts have held.

## VII.    ARGUMENT

### A.    The district court's failure to follow this Court's binding rulings on standing under the TCPA was clear error and should be reversed.

To have standing under Article III of the Constitution, a plaintiff must allege

a "concrete" injury in fact. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-340

(2016). "Concrete" means only that the alleged injury must be "real" and "not

abstract"; *i.e.*, "it must actually exist." *Id*. at 340. *Spokeo* confirmed that

"intangible" injury, and even a "risk of harm," may be "concrete" and "real" for

purposes of Article III. *Id.* at 340-341. *Spokeo* instructs courts to "consider two

factors to determine whether an intangible injury is cognizable": 1) "whether

Congress conferred the procedural right in order to protect an individual's concrete

interests"; and 2) whether the intangible harm is "analogous to a harm recognized

at common law …." *Buchholz v. Tanick*, 946 F.3d 855, 868 (6th Cir. 2020)

(citation omitted).

12

This Court has long held that persons alleging violations of the TCPA have standing under Article III. *American Copper & Brass, Inc. v. Lake City Indus. Prods.,* 757 F.3d 540, 545 (6th Cir. 2014) ("Accordingly, to the extent that Lake City relies on *Machesney* for the proposition that owners (and only owners) of fax machines have standing to sue under the TCPA, we reject Lake City's argument."). This Court then affirmed the reasoning of *American Copper* in *IMHOFF*:

> Congress may not confer jurisdiction on Article III courts to issue advisory opinions, *Sierra Club v. Morton*, 405 U.S. 727, 732 n.3, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972), and Congress cannot convert a generalized grievance "into an 'individual right' vindicable in the courts," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576-77, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Congress may, however, "enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973). Thus, once "a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1251 (11th Cir. 2015).
>
> The TCPA is just such a statute: it gives recipients of unsolicited fax advertising the legal right to recover damages and obtain injunctive relief from the senders of those faxes. 47 U.S.C. § 227(b)(1)(C), (b)(3). *American Copper* found that through the TCPA, Congress intended to remedy a number of problems associated with junk faxes, including the cost of paper and ink, the difficulty of the recipient's telephone line being tied up, and the stress on switchboard systems. Thus, viewing or printing

13

> a fax advertisement is not necessary to suffer a violation
> of the statutorily-created right to have one's phone line
> and fax machine free of the transmission of unsolicited
> advertisements. Here, there is sufficient evidence in the
> record to conclude that the plaintiff suffered an injury on
> two occasions: a fax transmission on November 13,
> 2006, and another fax transmission on December 4, 2006.

*IMHOFF,* 792 F.3d at 633.

In a decision that followed the Supreme Court's 2016 decision in *Spokeo* on standing, this Court affirmed the continuing vitality of *IMHOFF* in *In re Amedisys*, 2020 U.S. App. LEXIS 6364, where this Court denied permission to appeal the district court's ruling in the course of granting class certification that a plaintiff had standing in a TCPA case involving unsolicited faxes—a situation that the district court held was directly governed by *IMHOFF*. *See Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, W.D. Tenn. No. 1:17-cv-01149-JDB-jay, 2019 U.S. Dist. LEXIS 148034, at *6-8 n.4 (Aug. 30, 2019). The Sixth Circuit found that appellate review was not necessary to assess the district court's application of *Spokeo* because "[T]he upshot of *Spokeo* is that not *all* procedural violations open the door to federal court. But *some do,* even when the procedural violation causes only an intangible injury. Congress may choose to identify and elevate certain intangible, concrete harms by statute, as it has chosen to do with the TCPA." *In re Amedisys*, 2020 U.S. App. LEXIS 6364 at *2-3 (citation omitted). Under Sixth Circuit law, Mr. Dickson has standing.

This Court's conclusion that a TCPA violation states a claim under Article III is "not an outlier." *IMHOFF*, 792 F.3d at 633. The Third Circuit agrees, explaining that a plaintiff, "in asserting 'nuisance and invasion of privacy' resulting from a single prerecorded telephone call, her complaint asserts 'the very harm that Congress sought to prevent,' arising from prototypical conduct proscribed by the TCPA." *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017). The Third Circuit further explained that the next part of the analysis is whether the statutory cause of action created by Congress is analogous to a traditionally recognized cause of action and held that intrusion on seclusion was most closely analogous. *Id*.

*Susinno* further underscores the district court's error in its factually incorrect (and legally irrelevant) statement that Mr. Dickson only one received a single ringless voicemail. *Susinno* explains that the traditional tort of intrusion upon seclusion will lie "only when such calls are repeated with such persistence and frequency as amounts to … hounding." *Id*. While a traditional claim of intrusion would not lie for a single call (or two or three), Congress does have the power, consistent with Article III, to right wrongs for which there is no currently adequate remedy at law, provided that it is analogous to a traditionally recognized wrong:

> Yet when Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, it sought

to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress.

For these reasons, we hold that Susinno has alleged a concrete, albeit intangible, harm under the Supreme Court's decision in *Spokeo* and our decision in *Horizon*.

*Susinno*, 862 F.3d at 351-352 (footnote omitted).

The Ninth Circuit is in accord, finding a "plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (quoting *Spokeo*, 578 U.S. at 342). The Second Circuit also concurs, observing that receipt of unsolicited text messages, "sans and other injury," was sufficient to confer standing as that is precisely the harm that Congress targeted in passing the TCPA. *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88, 92-94 (2d Cir.2019).

The Seventh Circuit decision in *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) (Barrett, J.), makes it clear that Congress targeted intrusion upon seclusion in passing the TCPA and it is the nature of the violation of the TCPA that gives rise to Article III standing *because* it had a common law analogue. *See id.* at 462, *cert denied*, 141 S. Ct. 2552 (2021).

16

Rather than apply this Court's unequivocal precedents on standing under the TCPA, the Court adopted the flawed reasoning of the Eleventh Circuit in *Salcedo*, 936 F.3d 1162, and a handful of district court decisions that a single text message was insufficient to satisfy the injury in fact requirement of Article III, as well as *Grigorian*, 838 F. App'x 390, which followed *Salcedo* to hold that a single ringless voicemail was insufficient to confer standing.

The district court's disregard of this Court's clear rulings on standing under the TCPA demands reversal. As then Circuit Judge Barrett observed, *Salcedo's* analysis was flawed because "when *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a 'close relationship' in kind, not degree [as the court in *Salcedo* did]." *Gadelhak*, 950 F.3d at 461-463.

**B.    The United States Supreme Court's decision in *TransUnion* makes clear that a TCPA violation has a common law analogue and supports Article III standing.**

The United States Supreme Court's recent decision in *TransUnion*, 141 S. Ct. 2190, underscores that the district court's dismissal of Mr. Dickson's claims was erroneous. In *TransUnion*, the Court was faced with a class action stating violations of the Federal Fair Credit Reporting Act, 15 USC ¶ 1692, claiming misleading information had been placed in the credit files of members of a class of 8,185 individuals. *TransUnion*, 141 S. Ct. at 2202. Before trial, "the parties stipulated that the class contained 8,185 members, including Ramirez. The parties

17

also stipulated that only 1,853 members of the class (including Ramirez) had their credit reports disseminated by TransUnion." *Id.* at 2202.  After a trial, the jury awarded the entire class damages, which the Ninth Circuit affirmed in relevant part. *Id.*

The Supreme Court was absolutely clear that the 1,853 class members whose misleading credit information was transferred to third parties <u>did</u> have standing under Article III for violation of the FCRA:

> Start with the 1,853 class members (including the named plaintiff Ramirez) whose reports were disseminated to third-party businesses.  The plaintiffs argue that the publication to a third party of a credit report bearing a misleading OFAC alert injures the subject of the report.  The plaintiffs contend that this injury bears a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—namely, the reputational harm associated with the tort of defamation. *Spokeo, Inc.* v. *Robins*, 578 U. S. 330, 341, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016).
>
> We agree with the plaintiffs.  Under longstanding American law, a person is injured when a defamatory statement "that would subject him to hatred, contempt, or ridicule" is published to a third party.

*Id.* at 2208-09.  The Supreme Court did not require each class member whose information had been published to prove that they suffered individual harm from the publication, such as reputational harm or economic loss.  Rather, because the statutory claim with released information under the FCRA was analogous to the common law claim, injury-in-fact and Article III standing was satisfied. *See Lupia*

*v. Medicredit, Inc.,* No. 20-1294, 2021 U.S. App. LEXIS 24547, at *16 (10th Cir. Aug. 17, 2021) (the Supreme Court's decision in *TransUnion* "clarified the *Spokeo* standing requirements, including that the tort of intrusion upon seclusion is recognized as an intangible harm providing a basis for a lawsuit in American courts."). The Court observed, however, that, "[t]he remaining 6,332 class members are a different story." *TransUnion,* 141 S. Ct. at 2209. The Court held that because placing inaccurate but undisclosed information in an individual's credit file did not have a recognized analogue at common law, an undisclosed Fair Credit Reporting Act error was not an offense that constituted a concrete injury in fact to support Article III standing. *Id.*

The Supreme Court however, *drew a distinction between the Fair Credit Reporting Act and the TCPA*, citing a TCPA decision authored by then Seventh Circuit Judge Barrett, recognizing "intrusion upon seclusion" as a harm "traditionally recognized as providing a basis for [a] lawsuit[] in American courts." *Id.* at 2204 (citing TCPA case *Gadelhak*, 950 F.3d at 462). As noted above, *Gadelhak* makes it clear that it is the nature of the violation of the TCPA that gives rise to Article III standing *because* it had a common law analogue. *See Gadelhak*, 950 F.3d at 461-63. The Sixth Circuit is in accord: "'Congress may choose to "identify[ ] and elevat[e]" certain intangible, concrete harms by statute,' as it has chosen to do with the TCPA." *In re Amedisys*, 2020 U.S. App. LEXIS

19

6364, at *3 (citing *Buchholz*, 946 F.3d at 867 (in turn citing *Spokeo,* 578 U.S. 330)).  As with a published violation of inaccurate credit information, no additional proof of harm (such as listening to the voicemail and being wildly annoyed) is needed for a class of TCPA call recipients to satisfy Article III standing because of the tie to a recognized common law harm.

The Sixth Circuit's decision in *Ward v. Nat'l Patient Account Servs. Sols.,* No. 20-5902, 2021 U.S. App. LEXIS 24369 (6th Cir. Aug. 16, 2021), highlights the distinction between a TCPA claim, designed to protect privacy rights, and a purely procedural claim requiring a debt collector to disclose its identity in collecting a debt.  The Sixth Circuit held: "the mere failure to provide certain information does not mirror an intentional intrusion into the private affairs of another.  Indeed, Ward alleged in his complaint that NPAS, Inc.'s violation, *i.e.*, the use of an abbreviated name, confused him, not that it invaded his privacy." *Id.* at *9.  Mr. Dickson, by contrast, sued for a violation of the TCPA specifically alleging in paragraphs 31 and 32 of his Second Amended Complaint that his privacy rights, and those of his proposed class, had been invaded, which is directly analogous to an intrusion on seclusion, a traditionally recognized common law claim.  (2d Am. Complaint, R. 34, Page ID # 230, ¶ 31-32.)

Put simply, the class that Mr. Dickson seeks to represent (including himself) is on the same footing as the 1,853 class members in *TransUnion* whose inaccurate

credit information was published, not the 6,332 whose information was not released, and all members of the proposed class satisfy Article III's standing requirements.

**C.    The district court's framing of the case as involving a single ringless voicemail that did not tie up his line and attributing significance to his inability to recall the exact contents of the message was clear error.**

As set forth in his Statement of the Case, Mr. Dickson has both alleged and testified that he received multiple ringless voicemails on behalf of Direct Energy. Nevertheless, the district court framed the issue before it as presenting only whether a "single ringless voicemail ('RVM') is sufficient to confer standing under the Telephone Consumer Protection Act." (Memorandum of Opinion & Order, R. 148, Page ID # 8982.)

The record was clearly to the contrary. In his Second Amended Complaint, Mr. Dickson alleged that Direct Energy placed multiple prerecorded message calls to his cellular telephone number in 2017, including on September 19, November 3, December 1 and 21, leaving prerecorded messages claiming that Mr. Dickson should call a telephone number back about energy services. (2d Am. Complaint, R. 34, Page ID # 229, ¶ 23-25.) A call back to the number from which the calls originated resulted in representatives identifying themselves as being "with Direct Energy." (*Id*. at ¶ 26.) Mr. Dickson further stated in his deposition that he received eleven voicemails promoting Direct Energy. (Dickson Deposition, R.

140-1, PageID # 8732, 40:6-11.)  Mr. Dickson further testified that in some instances, his phone would ring, he would pick up, and the call would hang up but still leave a voicemail.  (*Id.* at PageID # 8744, 86:12-25.)  Mr. Dickson additionally testified that the ringless voicemails were "annoying and it was an invasion of my privacy."  (*Id.*)  Although as argued above, this misreading of the record should not have any significance for the Article III analysis, to the extent this Court disagrees, the district court's ruling is clearly erroneous and should be reversed.

The district court compounded its factual misreading of the record by making a factually incorrect and legally irrelevant finding that Direct Energy "successfully refuted the contention that Dickson was charged for the RVM or lost use of his phone upon receipt of the RVM."  (Memorandum Opinion and Order, R. 148, Page ID #8986.)  In addressing standing to bring a TCPA claim, this Court rejected purely economic harm as the only damage that could support Article III standing.  *Parchman*, 896 F.3d at 738-39 n.4 ("It would be a mistake to limit our view of the harms associated with a violation of the TCPA to only actual monetary damages, because the harm from these calls is not so limited.").

Finally, the district court included an additional incorrect and legally irrelevant assertion that "Dickson's sole alleged harm appears to be the *de minimis* time he took to read the RVN, a time so limited he did not recall its contents." (Memorandum Opinion and Order, R. 148, Page ID #8986.)  This finding reveals

that the district court was crediting only economic damage in the form of a tied up

(and charged for) line, which flies in the face of this Court's holding in *Parchman*.

In addition, the district court's emphasis on Mr. Dickson's alleged lack of memory

of the contents of the call as undermining his standing is contrary to this Court's

decision in *IMHOFF*, 792 F.3d 627, which demonstrates that a TCPA violation is

complete on commission of the violation and does not require personal memory by

the recipient.  In *IMHOFF*, this Court expressly rejected the defendant's claim that

a lack of personal knowledge of receiving an unsolicited fax undermined its

standing:

> Here, the district court adopted the reasoning of the
> district court decision in *Palm Beach Golf Ctr.-Boca, Inc.
> v. Sarris*, 981 F. Supp. 2d 1239 (S.D. Fla. 2013),
> emphasizing that Plaintiff's injury is outside of "its own
> personal knowledge" because it did not remember nor
> did it produce the faxes.  *Avio*, 18 F. Supp. 3d at 889.
> Subsequently, however, the Eleventh Circuit reversed its
> district court, as explained above.  Under our precedent,
> therefore, and that of other circuits, Biggerstaff's report
> is adequate to establish that Avio was a recipient of
> Alfoccino's two unsolicited faxed advertisements and
> has standing.

*Id.* at 633-34.

The factual finding that Mr. Dickson could not remember the content of the

call is further clearly erroneous as Mr. Dickson alleged in his complaint and

deposition testimony that the voicemails were promoting energy products, one

specifically mentioned Direct Energy by name, and that returning a call to the

caller identification number resulted in representatives identifying themselves as being "with Direct Energy." (2d Am. Complaint, R. 34, Page ID # 229, ¶ 25-27; Dickson Deposition, R. 140-1, PageID # 8732, 40:6-11.)

The district court's factual finding that Mr. Dickson did not suffer harm because he could not recall the contents of the call is clearly erroneous as a matter of fact and law.

**D.    The district court found that a ringless voicemail is analogous to a text and used that finding to adopt the reasoning of *Salcedo*, ignoring Magistrate Judge Limbert's finding earlier in this case that a ringless voicemail is a call.**

As is set forth above in section IV(C), while this case was still before Magistrate Judge Limbert, sitting by consent of the parties prior to his retirement and reassignment to Judge Adams, the court addressed a motion to quash by the third-party JDI, the agent employed by Defendants to send ringless voicemails promoting Direct Energy's goods and services.

In its motion, JDI argued its ringless voicemails were not calls, which Magistrate Judge Limbert rejected. To be sure, an RVM call is qualitatively far different than a text. In *Saunders*, 319 F. Supp. 3d 907—the case Magistrate Judge Limbert relied upon in finding the RVMs at issue in this case are calls under the TCPA—the court found that "Courts have consistently held that voicemail messages are subject to the same TCPA restrictions as traditional calls," that the "effect [of an RVM] on the plaintiff is the same" as a traditional call, that

24

"voicemails are arguably more of a nuisance to consumers than text messages," and that "[t]o limit the TCPA to instances where [the defendant] specifically dialed [the plaintiff's] phone number and then reached her voicemail, and exclude [the defendant's] back door into [the plaintiff's] voicemail box, would be an absurd result." *Id.* at 909-912. Adopting this reasoning, Judge Limbert held:

> Despite JDI's position that it does not attempt to contact any person, the Court agrees with the Western District of Michigan's reasoning that ringless voicemails are attempts to communicate via telephone and that to hold otherwise "would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted voicemail messages to wireless consumers."

(Order, R. 75, Page ID # 774 (reported at *Dickson*, 2019 U.S. Dist. LEXIS 96938, at *7 (quoting *Saunders*, 319 F. Supp. 3d at 911-912). Magistrate Judge Limbert's ruling is in accord with the Seventh Circuit holding with respect to voicemails in *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012), that "[t]he [TCPA] … curtails the use of automated dialers and prerecorded messages to cell phones … and routing a call to voicemail counts as answering the call." *Id.* at 638.

Direct Energy offered no meaningful basis for the district court to depart from Judge Limbert's ruling that RVMs are "calls" under the TCPA. Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation. *United States v.*

25

*Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (citing *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993)).  "As most commonly defined, the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citing 1B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.404 (1982)).  This Court should exercise its discretion to deem Judge Limbert's finding that RVMs are calls within the meaning of the TCPA and the law of the case, which is another reason for reversal of the district court's ruling.

## VIII.    CONCLUSION AND RELIEF SOUGHT

Mr. Dickson requests that the Court reverse the district court's dismissal of this action for lack of subject matter jurisdiction as Mr. Dickson's claim under the TCPA supports Article III standing.

DATED this 21st day of July, 2022.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
         misny@mmmb.com
*Attorneys for Appellant*

26

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,356 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman.

DATED this 21st day of July, 2022.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
       misny@mmmb.com

*Attorneys for Appellant*

27

## CERTIFICATE OF SERVICE

I, Brian K. Murphy, certify that on July 21, 2022, I electronically filed the document entitled Brief of Appellant Matthew Dickson with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF System.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 21st day of July, 2022.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
         misny@mmmb.com

*Attorneys for Appellant*

28

## DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS
## PER 6 Cir. R. 28(b)(1)(A)(ii) AND 6 Cir. R. 30(g)(1)

1.   R. 34, Plaintiff's Second Amended Class Action Complaint, Page ID ## 225-237

2.   R. 63, Just Deliver IT, LLC Motion to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, Page ID ## 487-494

3.   R. 75, Order of Magistrate Judge George J. Limbert denying Motion to Quash, Page ID ## 771-776

4.   R. 123, Direct Energy's Motion to Dismiss for Lack of Standing and Memorandum in Support, Page ID ## 4690-4701

5.   R. 124, Exhibit 1 to Direct Energy's Motion to Dismiss, Deposition of Matthew Dickson, Page ID ## 4702-4733

6.   R. 125, Plaintiff's Opposition to Direct Energy, LP's Motion to Dismiss, Page ID ## 4734-4750

7.   R. 129, Direct Energy's Reply in Support of Its Motion to Dismiss for Lack of Standing, Page ID ## 4796-4805

8.   R. 131, Defendant Direct Energy's Notice of Supplemental Authority, Page ID ## 4810-4812

9.   R. 131-1, Exhibit A to Notice of Supplemental Authority, *Grigorian v. FCA US LLC*, No. 19-15026, 2020 WL 7238392 (11th Cir. Dec. 9, 2020), Page ID ## 4813-4817

10.   R. 132, Unopposed Motion for Entry of Stay Pending Ruling of Sixth Circuit, Page ID ## 4818-4821

11.   R. 133, Marginal Entry Order granting Unopposed Motion for Entry of Stay Pending Ruling of Sixth Circuit, Page ID # 4824

12.     R. 135, Joint Motion to Lift Stay and Reinstate Motions to Active Docket, Page ID ## 4827-4830

13.     R. 137, Order of Reference lifting stay and instructing parties to re-file previously denied motions, Page ID # 5463

14.     R. 140, Direct Energy's Motion to Dismiss for Lack of Standing and Memorandum of Law in Support (re-filing of motion of previously filed R. 123), Page ID # 8709-8720

15.     R. 140-1, Exhibit 1 to Direct Energy's re-filed Motion to Dismiss, Deposition of Matthew Dickson, Page ID ## 8721-8752

16.     R. 146, Direct Energy's Notice of Supplemental Authority, Page ID ## 8955-8957.

17.     R. 146-1, Exhibit A to Notice of Supplemental Authority, Order Denying Motion for Class Certification in *Toney v. Advantage Chrysler-Dodge Jeep, Inc.*, No. 2021-CA-002428 (Fla. Cir. Ct. Feb. 24, 2022), Page ID ## 8958-8963

18.     R. 146-2, Exhibit B to Notice of Supplemental Authority, Report and Recommendation in *Toney v. Advantage Chrysler-Dodge Jeep, Inc.*, No. 6:20-cv-182-WWB-EJK, 2021 WL 4896949 (M.D. Fla. July 27, 2021), Page ID ## 8964-8970

19.     R. 146-3, Exhibit C to Notice of Supplemental Authority, Order adopting Report and Recommendation in *Toney v. Advantage Chrysler-Dodge Jeep, Inc.*, 6:20-cv-182-WWB-EJK, 2021 WL 3910135 (M.D. Fla. Sept. 1, 2021), Page ID ## 8971-8973

20.     R. 148, Memorandum of Opinion and Order granting Direct Energy's Motion to Dismiss for Lack of Standing, Page ID ## 8981-8986

21.     R. 149, Judgment Entry dismissing action for reasons stated in Memorandum of Opinion and Order, Page ID # 8987.

22.     R. 150, Notice of Appeal, Page ID ## 8988-8989.